IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 17-18-RGA |
| | : | |
| LORRAINE MOSLEY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S  MOTION *IN LIMINE*
TO EXCLUDE VIDEOTAPE EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 106**

## I.    INTRODUCTION

On March 7, 2017, the Grand Jury for the District of Delaware returned a two-count Indictment against Ms. Mosley, charging her with conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951(a) (Count One), and extortion under color of official right, in violation of 18 U.S.C. § 1951(a) (Count Two).

The Indictment alleges that Ms. Mosley, a former State of Delaware corrections officer, conspired to "receive a cash payment in exchange for smuggling prison contraband, specifically, a cell phone, into WCI for the WCI inmate," and obtained payment for the cell phone under color of official right.

This motion seeks to exclude the admission of a four and a half minute clip of a video taken at the Delores Baylor Women's Correctional Institute ("WCI") on May 27, 2015, that the government intends to introduce at trial.  The entirety of the videotape taken at WCI on May 27, 2015 was not preserved by the government or provided to the defense.  The four and a half minute clip of videotape from May 27, 2015 that the government seeks to introduce at trial is incomplete

and therefore fails to satisfy the mandates of Federal Rule of Evidence 106.  Since the government failed to seek to preserve the complete video for the date in question, the government should be precluded from entering into evidence at trial the small portion of video it now seeks to introduce.

## II.    FACTUAL BACKGROUND

On June 1, 2015, a cell phone was discovered at WCI inside the cell of inmate Tiera Smith. On June 4, 2015, this cell phone was connected to another inmate, Tyra Mills.  Inmate Mills alleged that Ms. Mosley, who at the time was working as a Corrections Officer at WCI, was paid $100 to bring the cell phone into the prison for Inmate Mills, and that on the day that she received the phone from Ms. Mosley, Ms. Mosley was working as a Rover at the prison, and put the phone in the staff bathroom of Inmate Mills Unit (Unit 6) for Inmate Mills to retrieve.  Lieutenant Sonia Sessoms reviewed video footage from WCI for the date May 27, 2015, which is the date the government alleges Ms. Mosley provided the cell phone in question to Inmate Mills.  After reviewing videotape from WCI for that date, Lt. Sessoms isolated a 4 and a half minute video clip that shows Ms. Mosley on Unit 6.  The video clip shows Ms. Mosley enter the staff bathroom where she remained for about three minutes.  After exiting the staff bathroom, Ms. Mills is seen on the video motioning to the workers table, at which point Inmate Mills walks over to the staff bathroom.  Ms. Mosley is then seen pointing inside the staff bathroom, at which time Inmate Mills enters the staff bathroom and Ms. Mosley walks away.  Shortly after entering the staff bathroom, Inmate Mills is seen leaving the staff bathroom and walking into another room.  That video clip ends after Inmate Mills is seen walking into the other room.  The government alleges that Ms. Mosley hid the cell phone in the staff bathroom for Inmate Mills to retrieve, and that this is what the above video clip depicts.  Nowhere in the video clip is Ms. Mosley or Inmate Mills seen in possession of a cell phone or cell phone

charger.

The government further alleges that Ms. Mosley was provided the cell phone that she is alleged to have smuggled into WCI by Shellnekia Clifton, who was Inmate Mills' girlfriend.  The government alleges that Ms. Mosley met with Ms. Clifton on the evening of May 26, 2015, at the Wawa located at 1450 Forest Ave, Dover, Delaware, for the purpose of obtaining the cell phone from Ms. Clifton.

On June 11, 2015, Special Agent Joaquin Balaguer met with the General Manager of Wawa located at 1450 Forest Avenue in Dover, Delaware, and requested video surveillance footage for the evening of May 26, 2015, the night Ms. Clifton alleges she met with Ms. Mosley at that Wawa.  On June 12, 2015, Agent Balaguer met with Delaware Department of Corrections (DE-DOC) Captain Michael Merson for the purpose of transferring items that Captain Merson obtained as a result of DE-DOC's investigation involving Ms. Mosley and the allegation that she smuggled a cell phone into WCI for an inmate.

## III.   LEGAL ARGUMENT

### A.   Videotape In Question Was In The Control Of The Government.

The government has informed Defense counsel that surveillance video at WCI is maintained for sixty (60) to ninety (90) days before the video is taped over by new video.  Therefore, the complete video taken at WCI on May 27, 2015 would have still existed on June 11, 2015, when the government became actively involved in investigating this case.  On June 11, 2015, Agent Balaguer collected video surveillance footage from the Wawa where it is alleged Ms. Clifton and Ms. Mosley met for the purpose of Ms. Mosley obtaining the cell phone.  On June 12, 2015, Agent Balaguer took possession of evidence collected by DE-DOC during its internal investigation of this case, which

3

included the four and a half minute video clip that is the subject of the instant motion.  The fact that

Agent Balaguer, on June 11, 2015, thought to request video surveillance from Wawa in connection

with his investigation in this case, demonstrates that Agent Balaguer was aware of the significance

and importance of preserving videotape evidence.    At the time the government became actively

involved in this case, the entire video from May 27, 2015 taken at WCI still existed, and the

government could have requested the entire video be preserved at that time.  The government had

the ability and opportunity to obtain and preserve the entire video from May 27, 2015 taken at WCI.

As such, the video in question was within the government's control.

> **B.**    **Because The May 27, 2015 Videotape Is Incomplete This Evidence Should Be Excluded From The Government's Case.**

Federal Rule of Evidence 106 partly codifies the "Rule of Completeness."  Rule 106 states:

"[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require

the introduction, at that time, of any other part – or any other writing or recorded statement – that

in fairness ought to be considered at the same time."  Fed.R.CrimP. 106;  *See U.S. v. Kofi Yevakpor*,

419 F.Supp.2d 242 (N.D.N.Y. 2006) (citing generally *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153,

171-72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (Brennan, J).  The Rule of Completeness compels

admission of additional evidence "if it is necessary to (1) explain the admitted portion, (2) place the

admitted portion in context, (3) avoid misleading the trier of fact, or (4) ensure a fair and impartial

understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir.1984) (citing *United States v.

Marin*, 669 F.2d 73, 84 (2d Cir.1982)).

In *U.S. v. Yevakpor*, the defendant was arrested at the New York-Canadian boarded for

importation of heroin. *See Yevakpor*, 419 F.Supp.2d 242.   At trial, the government sought to

introduce three one-minute video segments recorded of the defendant by the Customs Area Security Center. *Id.* at 244. The defendant filed a motion *in limine* asking for the exclusion of the video arguing that the "'surveillance provided to the defendant to date is not complete and only represents a small clip of the entire time the defendant was recorded. . .'" *Id.* The government indicated that it did "not possess any video other than the three one-minute segments, as the rest of the tape was recorded-over or erased by the Port personnel." *Id.* The court granted the defendant's motion *in limine*. The court indicated that "[t]he video segments do not clearly show the results of any search; they do not show a search of Defendant's person or of his companion's person before, during or after the boarder stop; and they do not show Defendant's subsequent arrest or anything else that may have occurred during the boarder stop and search. There is no volume or audio component accompanying the visual." *Id.* at 245. The court noted that a total of 34 minutes of tape were missing. *Id.* The court opined that it did not believe that the investigatory agency would delete material that was beneficial to the Government's case. And therefore, "the missing recording was, at best, neutral and, at worst, adverse to the Government's case or of an exculpatory nature for the Defendant. Thus, there is an appearance of impropriety on the part of the Government agency in only preserving about 12.5% of the amount of video affirmatively known to have exited." *Id.* at 247. The court further explained that "[e]ven if the video contained nothing of value to the Defense, that is something Defendant had the right to determine for himself after viewing the video as a whole." *Id.* The court concluded that "with that loss of opportunity, . . . the only tenable solution to be one of exclusion – exclusion of the remaining three minutes of Government proffered surveillance video." *Id.* In order to put the four and a half minute video clip in Ms. Mosley's case in context and ensure a fair and impartial understanding of the facts, video of Inmate Mills' movements after the clip ends, and

5

the movements of Ms. Mosley within the prison that day prior to her entering the staff bathroom in Unit 6, are relevant and necessary.

As was the case in *Yavakpor*, the four and a half minute video clip in the present case that the government seeks to introduce at trial was preserved to the exclusion of the rest of the video surveillance taken at the prison on May 27, 2015.  The government seeks to introduce the four and a half minute video clip as evidence of the encounter between Ms. Mosley and the inmate depicted in the video going into the staff bathroom, to suggest to the jury that the cell phone was provided to the inmate during the encounter depicted in the video.  However, nowhere in this four and a half minute clip do you see Ms. Mosely with a cell phone or a cell phone charger, nor do you see in this video clip the inmate in possession of a cell phone or charger when she exits the staff bathroom.

Moreover, without the benefit of reviewing the entire video from WCI for that date, the defense has no way of determining if the missing video was material or potentially exculpatory. There are cameras located throughout the prison.  The missing video would have shown Ms. Mosley's movements at the prison for that entire day.  If the defense had access to the entire video taken at WCI that day, it could have made clear that Ms. Mosley did not have a cell phone or charger in her possession that day.  Moreover, it would have also shown the activity of Inmate Mills for the remainder of the day after the time she is alleged to have obtained the cell phone and charger from the staff bathroom, which may have shed light on whether or not she was in possession of a cell phone and charger that day.

As the court noted in *Yevakpor*, "[e]ven if the video contained nothing of value to the Defense, that is something Defendant had the right to determine for himself after viewing the video as a whole." *Yevakpor*, 419 F.Supp2d at 247.  The government failed to preserve the entire video

taken inside WCI on May 27, 2015, which is the date the government alleges Ms. Mosley smuggled

the cell phone into the prison.  As such, fairness dictates that the government should be precluded

from using the four and a half minute video clip it now seeks to introduce at trial.

## IV.    CONCLUSION

WHEREFORE, Defendant Lorraine Mosley respectfully requests the Court to enter an Order

precluding the government from introducing the above noted evidence at trial.

Respectfully submitted,

  /s/ Edson A. Bostic
EDSON A. BOSTIC
Federal Public Defender


Dated: August 27, 2018

  /s/  Eleni Kousoulis
ELENI KOUSOULIS, ESQUIRE
Assistant Federal Public Defender

Office of the Federal Public Defender
800 King Street, Suite 200
Wilmington, DE  19801
302-573-6010
de_ecf@fd.org

Attorneys for Lorraine Mosley

7